GReen, J.
delivered the opinion of the court.
This bill is brought to - rescind a contract. The material facts in the record, are shortly as follows:
Before the passage of the act of 1S37, to dispose of the lands in the Ocoee District, Col. James White, of Abingdon, Virginia; had purchased from some Indian claimants their right to an enclosed field of about twenty acres, lying on the south side of *89 Tennessee river, near Ross’ landing. There was a ware-house and store-house at the landing, in which M. W. Legg, one of the defendants, did business for Col. White. On the field there was a cabin in which the complainant Sparks lived, and he was in possession of and cultivating the field as a subtenant under Rawlings, who had rented it from Legg, as White’s agent. Sparks was thus in possession of and residing in the field thus enclosed on the 29 th of November, 1S37, the day the law passed to dispose of the Ocoee lands. This law gave a preference of entry to .all those who were in possession of, and residing on, any vacant land in the said district at the date of its passage.
The defendant Legg considered himself and Sparks as holding possession of this land for White, and insisted that Sparks had no right to a preference of entry for himself, that it belonged to White, and that no one else had a right to purchase his preference right from Sparks, nor had he a right to sell to any one, and that White would sue Sparks if he should sell to any other person than himself. Sparks agreed to sell his occupant right to Legg for a watch, worth between ten and twenty dollars, which Legg gave him, and Sparks transferred the right of occupancy to Legg and Legg tranferred it to James White. Afterwards some other persons made offers to purchase from the complainant, but he refused to sell, but told Legg that he had not given him enough; Legg thereupon, offered and gave him ninety dollars in addition to the watch, and the first contract was cancelled, and Sparks assigned his right of occupancy to Legg for the consideration expressed, of one hundred and ten dollars.
The proof is, that the complainant was offered a larger sum for his preference of entry, than the amount he received from Legg, by several other persons, but he refused to receive it, saying, he would not sell to any one else, that he did not wish to get into any difficulty.
The assignment to Legg is dated the 4lh day of January, 1838, and the value of the occupant right, during the month of January, and before, is estimated by many witnesses to have been from fifteen hundred dollars to five thousand dollars.
The proof is, that the complainant is ignorant, of weak mind, *90 and was very poor; Col. White, for whom Legg acted, was known to be a man of sense, bold and determined in the prosecution of his rights, and was reputed to be very wealthy. Legg is a man of sense, and business capacity, and Sparks had great confidence in him.
Upon these facts, can this contract be permitted to stand? We think it cannot. The great inadequacy of price, taken in connection with the complainant’s ignorance, weakness of intellect, and confidence in the defendant Legg, furnish a sufficient ground that the complainant was overreached by Legg, and in ignorance of the right the law gave him, was induced to assign away his right of occupancy without reference to its real value. From all the proof, he seems rather to have regarded the sum Legg gave him rather as gratuity than as a full compensation for the valuable right he assigned away.
That a mere naked ignorance of the law, will not be sufficient to authorize a Court of Chancery to set aside a contract, is well settled. But if that ignorance be superinduced by the other party, or if there be a misplaced confidence, or if advantage be taken of the weakness of intellect, these and other influences, mixed with ignorance of the law, will be sufficient to set aside a contract. 1 Story Eq. sec. 125: Trigg vs. Read, 5 Hump. R. 529. Such is the present case, and, therefore, this contract must be set aside, and the title which has been acquired by the defendants, heirs of White, will be vested in the complainant.
But we think this decree is.erroneous in holding the defendants, heirs of White, to an account for the profits of a ferry across Tennessee river, at the place in controversy. A ferry is a franchise, and belongs to the person to whom the County Court may grant it. It is true the owner of the land is entitled to the grant of this franchise in preference to another, and if he applies to the County Court, it is their duty to grant it to him; but if he shall not so apply, the grant may be made to another. The party who has the grant of this franchise, and prepares his craft and performs the labor of the ferry, is entitled to the fees which are allowed him, and is not subject to account to the owner of She land for the same.
*91 The decree for money is erroneous in form. The decree is against Elizabeth White, administratrix of James White, to be paid out of assets in her hands.
The record shows her administration was taken in Virginia, and no administration has been taken of James White’s estate in Tennessee. This court cannot decree against a foreign administrator as such. It is objected, that the rules that were taken in the cause do not appear in this record, and that it does not appear, that publications have been made against absent defendants, or that decrees pro conjesso have been regularly taken. It is not necessary to copy into the record the rules which were taken in bringing the case to a hearing, unless some question has been made in reference thereto in the court below.
The Chancellor’s decree states, that the cause came on to be heard on the bill, answers and decrees pro confesso, See. We must take it, that these preparatory proceedings were regular, as no objection was made, at the hearing below, that the parties were not properly before the court.
The decree will be reversed, and reformed according to this opinion.